UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


COREY A. WILLIS                           CIVIL ACTION NO. 05-0549

VERSUS                                    JUDGE HICKS

WARDEN OF DAVID WADE                      MAGISTRATE JUDGE HORNSBY
CORRECTIONAL CENTER


## REPORT AND RECOMMENDATION

**Introduction**

Corey Willis ("Petitioner") was charged with two counts of attempted second degree murder arising from the shootings of two brothers, Thomas Ridley and Wallace Ridley, that happened around 2:00 a.m. in front of Club Adrian, a lounge in a rural area near Homer. A Claiborne Parish jury found Petitioner guilty of the lesser crimes of attempted manslaughter of Thomas Ridley and aggravated battery of Wallace Ridley. The district court imposed sentences of 15 and 7 years, to run consecutively. Petitioner pursued several issues on direct appeal and then filed this federal petition for habeas relief. It is recommended, for the reasons that follow, that the petition be denied.

**Sufficiency of the Evidence**

**A. Procedural History**

The trial judge instructed the jury on the elements of attempted second degree murder and the possible responsive verdict of attempted manslaughter, for which Petitioner was convicted. The judge instructed that attempted manslaughter is the killing of a human being

when the defendant has a specific intent to kill, but the killing is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.  The judge also defined the crime of aggravated battery, which is the intentional use of force or violence upon the person of another with a dangerous weapon.  Tr. 702-03.  Count one related to the shooting of Thomas Ridley, and the jury returned a verdict of guilty of attempted manslaughter.  Count two related to the shooting of Wallace Ridley, and the jury returned a verdict of guilty of aggravated battery. Tr. 711-716.

Petitioner filed a motion for a new trial on grounds including lack of medical evidence to establish intent to kill.  Tr. 43.  The trial court eventually denied that motion, and Petitioner pursued the issue, as well as a general sufficiency of the evidence challenge, in the appellate court.  That exhausted Petitioner's state court remedies sufficiently to pursue federal habeas review of those issues.

**B. Federal Standard of Review**

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id. The Jackson inquiry "does not focus on

whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." <u>Herrera v. Collins</u>, 113 S.Ct. 853, 861 (1993).

The Louisiana appellate court invoked, recited and applied the <u>Jackson</u> standard on Petitioner's direct appeal, so its decision was not "contrary to clearly established Federal law," and Petitioner can obtain habeas relief only if the State court's decision was an "unreasonable application" of <u>Jackson</u>.  28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1523 (2000); <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. <u>Williams</u>, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. <u>Lockyer v. Andrade</u>, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

### C. Summary of Relevant Testimony

Wallace Ridley fought, on the evening in question, with a bar patron known as Slim. Wallace testified that later, at the time of the shootings, he had a second fight with Petitioner's brother, Starsky.  Tr. 603-04.

Thomas Ridley testified that, after the first fight, he and his brother had walked to their car to leave, but Thomas had to go back to the club and retrieve the keys to the car.  As Thomas was returning, he stopped to light a cigarette and noticed that his brother, Wallace, was engaged in a scuffle with both Starsky and Slim.  Thomas testified that he heard a blast, a big puff of smoke surrounded him, and he felt a sting across his back that made him jump. He turned to see Petitioner standing in front of him with a sawed-off, pump shotgun. Thomas said that he threw his hands in the air, asked Petitioner what was going on and asked that Petitioner help him break up the fight.  Thomas testified that Petitioner "just smirked" at him.  Thomas said he began walking backwards with his hands in the air, and Petitioner was walking toward him.  Thomas reached the edge of a ditch and could go no further.  He kept repeating Petitioner's name.  Thomas testified that Petitioner crouched and "kind of like smirked or smiled" and then fired the shotgun at Thomas.  The shot hit Thomas in his left leg, and Thomas fell to the ground.

Thomas testified that Petitioner then spun around, fired a shot in the air, and fired a shot at Wallace Ridley that hit Wallace in the leg.  Thomas testified that Petitioner then turned around to face Thomas again and "put the shotgun in my face."  Thomas said that he

threw his hands up and kept calling Petitioner's name, asking him why he was doing this. Petitioner pumped the shotgun one time, pulled the trigger and nothing happened, so Petitioner pumped the gun again. Thomas testified that he saw a shell extract, but he did not know whether it was an empty hull or a live shell. Petitioner had the shotgun pointed in Thomas's face during these events.   Tr. 404-95.

Thomas testified that he spent 17 days in the hospital and had five surgeries because of the shooting. Much of his lower leg is numb because of nerve damage. The emergency room physician who first treated both victims described Thomas's wound as a severe traumatic injury with a large bone deficit, meaning the blast removed a segment of bone from the leg. Tr. 634-44.

Witnesses identified Petitioner as the shooter, and a policeman who was at the club at the time testified that he heard four gunshots and saw Petitioner passing a sawed-off shotgun to Starsky as the two men ran out of a wooded area. Cynthia Ridley, the sister of the victims, was also at the club. She testified that Petitioner had been the gunman who shot both Thomas and Wallace. Ms. Ridley was asked if she saw Petitioner come back and attempt to shoot Thomas a second time. She answered, "Not that I know of." Tr. 546-95.

### D. Analysis

The state appellate court discussed the trial evidence at length and assessed the sufficiency of the evidence under the proper Jackson standard. The Court noted that specific intent to kill, the element of the attempted manslaughter conviction that Petitioner

challenged, may be inferred under Louisiana law when a defendant aims a gun directly at his victim and fires. Relevant to the intent to kill issue, Thomas Ridley had testified that he felt a shotgun blast across his back, was shot in the leg, and that Petitioner pointed the gun directly at his face and attempted to fire it. Petitioner argued that Thomas's testimony should be discounted because it was "confused and meandering," which is true with respect to most of the testimony at this trial. The state appellate court acknowledged that witnesses disagreed about which persons were present at what times, how many shots were fired, who was fighting with whom, and the like, but it concluded that the jury obviously disregarded the inconsistencies. The Court reasoned that such inconsistencies may be expected from witnesses who describe the end of a late night of drinking and fighting. The evidence that Petitioner fired two shotgun blasts at Thomas, with one blast causing a serious injury, and attempted to fire a third shot at Thomas's head was deemed adequate, when viewed in the light most favorable to the prosecution, for a rational trier of fact to have found beyond a reasonable doubt that Petitioner had the specific intent to kill Thomas. State v. Willis, 823 So.2d 1072, 1076-79 (La. App. 2d Cir. 2002), writ denied, 870 So.2d 262 (La. 2004).

Petitioner repeats before this court the arguments he made on direct appeal. The state court reviewed those arguments carefully, applying the correct constitutional standard. Petitioner's arguments were good ones to make before the jury, but once the jury made its decision, the ability of the courts to grant relief based on the arguments became quite limited. The appellate court quite reasonably determined that the jury had sufficient evidence before

it to establish specific intent.  There is no basis for this court to determine that the state court's adjudication of the issue was an objectively unreasonable application of the <u>Jackson</u> standard, so habeas relief is not available on this claim.

**Excessive Sentence**

Petitioner argues that the trial court imposed an unduly harsh and excessive sentence, failed to articulate reasons for the sentence as required by state law, and did not articulate adequate justification for imposing consecutive sentences.  The State raised a procedural bar objection to these issues because the state appellate court held that Petitioner was precluded from advancing those issues on appeal because he did not comply with the procedural requirement of filing a motion to reconsider the sentence in the trial court.  Petitioner was, therefore, limited to having the appellate court consider a bare claim of constitutional excessiveness.  <u>State v. Willis</u>, 823 So.2d at 1081.  The appellate court nonetheless addressed the merits of the claims, but when a state court expressly bases its denial of relief on a state procedural default, even in the alternative, it may bar federal review of the claims.  <u>Fisher v. State of Texas</u>, 169 F.3d 295, 300 (5th Cir. 1999).  Petitioner responded to the invocation of the procedural bar defense by stating in his traverse (Doc. 13) that the State was correct and that "at this time the petitioner will abandon said issues."

The issues would lack merit even if not abandoned.  The sentences imposed were well within the statutory range available to the trial court and, as noted by the appellate court, were warranted in light of the senselessness of the crimes and the serious injuries inflicted.

Habeas relief from such a reasonable sentence is not available.  Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987).  Furthermore, a state court's failure to comply with La. C. Cr. P. art. 894.1, which requires the statement of a factual basis for the sentence, is not reviewable by federal habeas corpus.  Id. That is because habeas review does not lie for errors of state law. Wood v. Quarterman, 503 F.3d 408, 412 (5th Cir. 2007).

**Sentencing Delay**

Petitioner's final argument is that his sentence should be vacated because the trial judge did not comply with La. C. Cr. P. art. 873, which requires a 24-hour delay between the denial of a motion for new trial and the imposition of sentence.  The trial judge ran afoul of that rule when she denied the motion for a new trial and immediately imposed the sentences. Tr. Vol. 5, pp. 81-86.

The state appellate court observed that, when there is such a violation, Louisiana law does not require a remand for a new sentence if there has been a substantial lapse of time between the trial and the imposition of sentence unless there is a showing of prejudice.  More than 20 months had passed between the guilty verdicts and the challenged sentencing, and Petitioner had not articulated any grounds for prejudice.  Relief was denied.  State v. Willis, 823 So.2d at 1083.

As noted above, federal habeas corpus relief is not available for a complaint that a state court did not properly apply state law.  See Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991) ("We have stated many times that federal habeas corpus does not lie for errors of state

law.") Petitioner has not exhausted or presented a federal constitutional claim related to the lack of delay. Thus, Petitioner's arguments about the trial court's compliance with Article 873 do not permit relief to be granted.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied and that Petitioner's complaint be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 31st day of January, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE